## Leibovitz v. Hamburg.

*Samuel E. Kratzok*, for plaintiff; *Mayers & Miller*, for defendant.

ALESSANDRONI, J., July 14, 1931.—Abraham Leibovitz leased to William Hamburg the store at No. 1326 West Montgomery Avenue in the City of Philadelphia for a term of five years from July 1, 1929. It was provided in the lease that the premises were not to be occupied otherwise than as a delicatessen store. Provision was also made for an amicable action and confession of judgment in ejectment in the event that any of the conditions of the lease were broken. By virtue of this clause the plaintiff entered an amicable action and a confession of judgment in ejectment, averring that the defendant had breached the terms of his lease by engaging in the sale of ice cream, sandwiches, milk, etc., for consumption on the premises. The defendant thereupon filed a petition to open judgment, upon the allegations of which this rule to show cause was allowed. The petition avers that the amicable ejectment action was entered on an averment that the defendant had breached the clause of the lease providing that the premises should not be occupied other than as a delicatessen store; that the defendant has not occupied the premises otherwise than as a delicatessen store at any time, and further avers that the plaintiff accepted rent subsequent to the written notice sent to the defendant to vacate, which it is alleged constitutes a waiver.

The answer to the petition again states that the defendant has occupied the premises other than as a delicatessen store because he sells sandwiches, pies, beverages, soft drinks and other articles of food for consumption on the premises, thereby conducting a restaurant thereon.

The answer further avers that on August 8, 1928, the plaintiff leased a store located at the southeast corner of Broad Street and Montgomery Avenue for a term of five years as a restaurant, by the terms of which lease the plaintiff agreed not to lease any of the adjoining stores as a restaurant; that at the time the defendant entered into his lease he had knowledge of the covenant in the lease for the restaurant with a certain Mr. Totis and Mr. Lekas; that because the defendant sold sandwiches, pies, etc., for consumption on his premises, Totis and Lekas instituted an action for damages for breach of covenant in the lease and that the defendant was notified of the action and requested to defend it but refused to do so; that as a result of the trial the jury returned a verdict in favor of Totis and Lekas against Abraham Leibovitz, finding that the defendant herein used his premises as a

restaurant. It is further denied that rent was accepted after notice was given the defendant to vacate. On the contrary, it is averred that the plaintiff returned a check for rent sent to him.

A supplemental petition to open the judgment was subsequently filed, in which it was averred that the plaintiff had executed a complete assignment of the lease to the Israel Tress Building and Loan Association and, therefore, the plaintiff had no legal right to bring the within action. An answer to this supplemental petition was filed, in which the plaintiff averred that he executed an assignment of the lease to the Israel Tress Building and Loan Association as collateral security for the payment of mortgage debts and that in so doing the plaintiff retained all the beneficial interest in the lease and the rents therefrom.

Depositions were taken sur the petitions and answers thereto, and the defendant and three witnesses testified that it is a usual and regular part of the business of a delicatessen store to sell sandwiches, soft drinks, pies and ice cream which are eaten on the premises. The defendant further testified that his delicatessen store is outfitted with shelves, counters and general paraphernalia necessary to conduct a delicatessen business, and, in addition, has seven chairs upon which customers can be seated while waiting for their orders to be filled, and also are used by people who "come in and sit down and eat and drink on the premises." These are plain wire chairs with wooden seats, without arms of any kind, and there are no tables whatsoever in the store. Two apparently disinterested witnesses, thoroughly experienced in the delicatessen business, testified that it is a regular, usual and common part of a delicatessen store business to sell sandwiches, drinks, pies, cakes and coffee and permit customers to eat any and all of these articles in the store. They further testified that a delicatessen store could not be run profitably if customers were not permitted to eat sandwiches, soft drinks, etc., on the premises. The defendant's daughter, who assists him in the store, testified to the same effect. The defendant also testified that after he opened the shop the plaintiff came to his store, had a sandwich, saw him sell sandwiches to others and complimented him upon the fine business he had.

No testimony was introduced by the plaintiff to rebut the defendant's evidence regarding the scope of business embraced in the term "delicatessen store." The plaintiff relied solely on the testimony taken at the proceeding brought by Totis and Lekas against him for damages for breach of the terms of his lease. We do not consider this evidence as controlling in the matter now before us. Whether the sale of sandwiches, soft drinks, ice cream, etc., is considered as part of a restaurant business and, therefore, a breach by the plaintiff of his lease with Totis and Lekas does not adjudicate the question as to whether the sale of sandwiches, ice cream, soft drinks, etc., in a delicatessen store is part of the usual and customary business done in a delicatessen store and embraced within the meaning of the term "delicatessen store." Whether the plaintiff has violated his lease with Totis and Lekas is not determinative of the issue now before us. Our sole question is: Was Hamburg occupying the premises solely as a delicatessen store? He and three other witnesses all testified that he so did. Their testimony is uncontradicted.

It must also be borne in mind that the defendant did not have tables or service in his delicatessen store and did not serve meals or hot cooked foods. His witnesses testified further that it was customary for delicatessen stores to sell sandwiches, soft drinks, etc., not only in the City of Philadelphia but in the surrounding territory. The term "delicatessen store" must be given

its general, established, usual and ordinary meaning, and the defendant's evidence clearly defines it.

And now, to wit, July 14, 1931, the rule to open judgment and let the defendant into a defense is made absolute.